IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BRYAN MORTON, # 203759                                    PETITIONER

VS.                                CIVIL ACTION NO.  3:18-cv-702-KHJ-FKB

WARDEN SHAW                                              RESPONDENT

## REPORT AND RECOMMENDATION

Before the Court are the original petition [1] and amended petition [8] for habeas corpus relief filed by Bryan Morton, to which Respondent has filed an answer [11].  Petitioner has filed a Traverse [13], and other filings followed.  *See* [14], [15].  For the reasons explained below, the undersigned recommends that the amended petition be denied, and that this matter be dismissed with prejudice.

I.    FACTS AND PROCEDURAL HISTORY

Morton is challenging his convictions in the Circuit Court of Warren County, Mississippi for the crimes of attempted murder, armed robbery, and burglary of a dwelling.  [8] at 1. [1]

A brief review of the facts will aid in the consideration of the case.  The female victim, Charlie Arnold, was asleep in her bed at home when she was awakened in the early morning hours of May 4, 2014, by a woman hitting her over the head with a walking stick and the sounds of a baby crying.  *Morton v. State*, 246 So. 3d 895, 900 (Miss. Ct. App. 2017); *reh'g denied*, Mar. 27, 2018, *cert. denied*, June 28, 2018; [12-3] at 58.  Arnold recognized the woman, Kimberly Chapman, because Chapman had dated Arnold's son a few years earlier.  *Morton*, 246

---

[1] In response to a Court Order [7], on January 7, 2019, Morton filed an amended petition [8], naming the Warden Shaw as respondent.  The Court has reviewed the amended petition, and it is a copy of the original petition [1].  For ease of reference, the Court will refer to the amended petition [8].

So. 3d at 900.  The victim also heard the voice of a man behind her and then was hit from behind.  *Id.*  Chapman stabbed her and, at some point, Arnold passed out.  *Id.*

A few hours later, just after 11:00 a.m., a passerby on Highway 80 in Vicksburg reported to law enforcement that he or she saw a woman, standing next to her disabled vehicle on the side of the road.  *Id.*  The passerby described the woman as covered in blood and noted that she was holding a baby.  *Id.*  A responding officer determined that the woman, later identified as Chapman, did not have any injuries.  *Id.*  In the meantime, he observed identification and other items in the car belonging to Arnold.  *Id.*  After another officer came to assist Chapman, the responding officer proceeded to check on Arnold.  *Id.*  When he and other officers arrived at Arnold's home, the responding officer found her lying in a fetal position on the floor in her bedroom, with severe head wounds and covered in blood.  *Id.*  At the scene, Arnold told officers that Kim Chapman had broken into her home and attacked her, along with an unidentified man.  *Id.*  Arnold was transported to a hospital for medical attention and spent several months in a rehabilitation hospital recovering from the attack.  *Id.*

Morton was later arrested for the crimes.  During the course of the investigation, and after obtaining a search warrant, officers collected items from Chapman's disabled car.  *Id.* at 901; [12-4] at 72.  Officials later obtained a search warrant for a vehicle that Morton was known to drive, from which they collected a knife and a shotgun barrel.  *Morton*, 246 So. 3d at 901.  DNA testing showed that a jacket recovered from Chapman's car had DNA consistent with Arnold's, as well as Morton's.  *Id.*  DNA from a broken gun stock found at the scene of the crime was consistent with Arnold's, and DNA from the walking cane could have been Arnold's.  *Id.*  Phone

records showed several texts and phone calls between Chapman and Morton from the night of May 3 into the morning of May 4. *Id.*

After a jury found Morton guilty of the charges, the trial court sentenced Morton to thirty years for the attempted-murder conviction and thirty years for the armed-robbery conviction, to be served consecutively in the custody of the Mississippi Department of Corrections. *Id.* at 900-901. The trial court sentenced Morton to twenty years for the burglary conviction, to be served concurrently with the attempted-murder and armed-robbery convictions. *Id.* at 901.

With the aid of counsel, Morton appealed his convictions and sentences to the Mississippi Supreme Court, raising the following issues:

1. The indictment is insufficient as to the attempted murder charge in Count I of the indictment, which fails to allege an essential element of the offense.

2. The elements jury instruction for attempted murder in Count I omits an essential element and varies in material aspects to the indictment.

3. The elements jury instruction for armed robbery in Count III varies materially from the elements and facts alleged in the indictment.

4. Morton received constitutionally ineffective assistance of counsel.

[12-10] at 5. In addition, Morton filed a *pro se* supplemental brief on appeal, raising the following issues:

1. Trial court erred by allowing inadmissible testimony about prior criminal activity not resulting in a conviction.

2. Trial court erred by allowing lay-witness to give his opinion.

3. Trial court erred in allowing prosecution to bolster it's [sic] case.

4. Appellant received constitutionally ineffective assistance of counsel.

*Id.* at 52. The State responded to both filings, and Morton filed a *pro se* supplemental reply brief that raised additional claims. *Id.* at 108-130.

3

On November 21, 2017, the Mississippi Court of Appeals affirmed Petitioner's convictions and sentences. *See Morton*, 246 So. 3d at 895. In its opinion, the Court addressed issues raised by Morton and his counsel in their initial briefs, but found the issues raised in his *pro se* reply brief to be procedurally barred. *Id.* at 906.[2]

After the Mississippi Supreme Court denied *certiorari* review, Morton filed an "Application for Motion to Vacate Conviction" on July 10, 2018. [12-12] at 36-54. In that filing, he raised the following claims, *pro se*:

1. That biological evidence exists, that if tested, would render the testimony of Kimberly Chapman inadmissible and would have otherwise resulted in the Petitioner's acquittal.

2. Petitioner's counsel was ineffective due to the following causes:

   (a) Petitioner's counsel was ineffective for failing to file a Motion to Suppress physical evidence admitted at trial;

   (b) Petitioner's counsel was ineffective for failing to request alibi defense instructions;

   (c) Petitioner's counsel was ineffective for failing to request DNA testing.

3. Post-conviction DNA testing results will prove that Kimberly Chapman committed perjury, also explain Petitioner's DNA presence on physical evidence, also debunking the State's theory of Petitioner's DNA on jacket presented at trial that was only used to prejudice or bias the jury towards Petitioner.

4. That Petitioner's conviction rests on misleading evidence and false testimonies such that he has been denied due process of law and his conviction cannot stand. Petitioner should be granted an evidentiary hearing.

---

[2] While his direct appeal was pending, Morton filed a *pro se* "Application for Motion to Vacate Conviction," on April 12, 2018 in Mississippi Supreme Court Cause No. 2018-M-00541. On April 26, 2018, the Mississippi Supreme Court dismissed Morton's motion without prejudice because his petition for writ of *certiorari* for his direct appeal was still pending before the court, and the mandate on his direct appeal had not yet issued. [12-12] at 55.

*Id.* at 37-39. Within days, on July 13, 2018, Morton had filed a *pro se* "Motion for Post Conviction Collateral Relief" as an attachment to his application, raising the following claims for relief, as follows:

1. The indictment is insufficient as to the attempted murder charge in Count I of the indictment, which fails to allege an essential element of the offense.

2. The elements jury instruction for attempted murder in Count I omits an essential element and varies in material aspects to the indictment.

3. The elements jury instruction for armed robbery in Count III varies materially from the elements and facts alleged in the indictment.

4. Morton received constitutionally ineffective assistance of counsel.

   (a) Trial counsel failed to request an alibi defense instruction.

   (b) Trial counsel failed to request a "*Franks* Hearing" on the validity of the search warrant.

   (c) Trial counsel failed to request an evidentiary hearing on all post-conviction motions.

   (d) Trial counsel was ineffective for failing to enter into a plea bargain.

5. Trial court erred by allowing inadmissible testimony.

6. Trial court erred by allowing lay witness to give his opinion.

7. Trial court erred by allowing prosecution to bolster its case.

*Id.* at 8-11.

In an order entered on September 5, 2018, the Mississippi Supreme Court denied relief on Morton's "Application for Motion to Vacate Conviction" and "Motion for Post Conviction Collateral Relief." [11-4]. The court found that his challenges to DNA evidence, the attempted murder indictment, the attempted murder jury instruction, the armed robbery jury instruction, witness testimony, and evidence were barred from further review because they were raised on

5

direct appeal. *Id.* at 1. The court also found that Morton's claims of ineffective assistance of counsel failed to meet the requisite prongs of deficient performance and prejudice. *Id.*

Morton signed his initial petition [1] on October 2, 2018, and it was stamp-filed in this Court on October 9, 2018. [1] at 1, 15. Morton raised the following grounds for relief in both his petition [1] and amended petition [8]:

1. Ground One: Inadmissible testimony by Kimberly Chapman.

2. Ground Two: Ineffective assistance of counsel.

   (a) Counsel failed to request alibi defense instructions.

   (b) Counsel failed to request a "*Frank*'s hearing" on search warrant.

   (c) Counsel failed to request DNA testing that would prove perjury of State's witness.

3. Ground Three: Trial court erred by allowing a lay-witness to give his opinion.

4. Ground Four: Trial court erred in allowing prosecution to bolster its case.

5. Ground Five: The indictment for attempted murder is insufficient.

6. Ground Six: The jury instruction for attempted murder is insufficient.

7. Ground Seven: The jury instructions for armed robbery are insufficient.

[8] at 5-23. The Respondent filed a response [11] with the State court record [12], to which Petitioner filed a Traverse [13], reiterating his arguments presented in his petition [8]. The State filed a reply [14] to the Traverse [13], to which Petitioner filed another reply [15]. This matter is now ripe for review.

II.    <u>DISCUSSION</u>

At the outset, the Court notes that its review of Morton's conviction is circumscribed. Federal courts do not sit as "super" state supreme courts in habeas corpus proceedings to review errors under state law. *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991). Instead, "[a]

state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in

violation of the Constitution or laws or treaties of the United States.'" *Engle v. Isaac*, 456 U.S.

107, 110 (1981)(citing 28 U.S.C. § 2254(a)).

      Petitions for a writ of habeas corpus are governed by 28 U.S.C. § 2254.  As amended by

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the relevant portions of

§ 2254 provide, as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
>      (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>      (B)    (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant,
>
>      (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
>      (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be not granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(b)-(d)(1996).

Claims that are adjudicated on the merits by the state court, either in direct appeal or in a post-conviction proceeding, are subject to the highly deferential standard of review of the AEDPA. The Supreme Court has repeatedly emphasized that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)(quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the application must be not only incorrect, but also "objectively unreasonable." *Id.* at 409.

A. Procedurally-Barred Claims

Respondent argues that review of Morton's Grounds Three and Four is procedurally barred. Morton argues in Ground Three that the trial court erred by allowing a lay witness to give his opinion. In Ground Four, Morton asserts that the trial court erred in allowing the prosecution to bolster its case. The Mississippi Court of Appeals found these grounds to be procedurally barred on direct appeal because Morton failed to object to these lines of questioning at trial. *Morton*, 245 So. 3d at 906-907. Likewise, the Mississippi Supreme Court found that these claims were procedurally barred from review on post-conviction collateral relief. *See* [11-4] at 1.

Where a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred

unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural rule is "adequate" if it is regularly and consistently applied. *Johnson v. Mississippi*, 486 U.S. 578, 187 (1988); *see also Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995)("An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims."). The Fifth Circuit has specifically held that Mississippi state courts consistently and regularly apply the bar imposed for failure to raise issues at trial, *i.e.*, the contemporaneous objection rule. *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992); *see also Day v. King*, No. 1:03-cv-624-DMR-JMR, 2006 WL 2541600, at *4 (S.D. Miss. Aug. 31, 2006). Thus, Morton defaulted these claims pursuant to an independent and adequate state procedural rule.

Turning to the next step in the analysis, federal habeas review of Morton's claims in Grounds Three and Four is barred unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also Sones*, 61 F.3d at 416. To demonstrate cause for a procedural default, Morton must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). Ineffective assistance of counsel can establish "cause" for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-489 (1986). To establish

prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003).

Morton has failed to allege cause for default or actual prejudice. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). As for any claims of actual innocence, Morton has failed to show "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999); *see also* [15] at 8. Accordingly, this Court's review of Grounds Three and Four is procedurally barred.

B. Reviewable Claims

    1. Ground One:  Inadmissible testimony by Kimberly Chapman

Morton argues that Kimberly Chapman provided inadmissible testimony when she testified about his prior criminal activity that did not result in a conviction. [8] at 5. At trial, Morton's counsel immediately objected to the testimony on the ground of hearsay. [12-5] at 147-148. The trial court struck the testimony from the record. *Id.* at 148. On direct appeal, the Mississippi Court of Appeals found that the trial court struck Chapman's testimony based on a hearsay objection, therefore it was not admitted into evidence. *Morton*, 246 So. 3d at 906. Moreover, the appeals court found that an objection based on prior bad acts was not properly preserved for appellate review because defense counsel's basis for the objection at trial was hearsay, not prior bad acts. *Id.*

Because this point raises a question of law, this Court's review is limited to determining whether the state court's ruling involved an unreasonable application of clearly established federal law. The admissibility of evidence is a matter of state law. *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989). The Supreme Court has held that federal habeas corpus relief will not be granted for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "When a federal

court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious to render the entire trial fundamentally unfair." *Edwards v. Butler*, 882 F.2d at 164.  In other words, federal habeas corpus relief is appropriate only when a conviction has been obtained in violation of federal law or a specific right protected by the United States Constitution.  28 U.S.C. § 2254(a); *Smith v. Phillips*, 455 U.S. 209 (1982).  An erroneous state evidentiary ruling may be the basis for federal habeas corpus relief only if "the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987).

The undersigned finds that the state court decision on this issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  The trial court sustained the objection of Morton's counsel and struck the testimony from the record. Morton's arguments alleging deprivation of a fair trial due to this brief, yet stricken, testimony are simply speculative and conclusory.  "Although *pro se* petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990)(quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).  Moreover, this brief testimony cannot be said to have played a "crucial, highly significant factor" in Petitioner's conviction, in light of other evidence of his guilt.  *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998).

    2.   <u>Ground Two:  Ineffective Assistance of Counsel</u>

Morton alleges that his counsel was ineffective when he failed to request an alibi defense instruction, when he failed to request a "*Frank*'s hearing" on the search warrant, and he failed to request DNA testing that would prove perjury by a State's witness.  The Mississippi Supreme

Court evaluated these claims on post-conviction review and found that they failed to meet the requisite standards of deficient performance and prejudice. [11-4] at 1.

An ineffective assistance of counsel claim is analyzed under the two-prong test found in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The question for this Court is whether the state court's application of the *Strickland* standard was unreasonable. *Mitchell v. Epps*, 641 F.3d 134, 141 (5th Cir. 2011). To meet the *Strickland* standard, first, petitioner "must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. If a petitioner can establish deficient performance by his attorney, then he must also demonstrate the second prong of *Strickland*, "that [his attorney's] deficient performance prejudiced [his] defense." *Id.*

The standard of review of an attorney's performance is "highly deferential," considering only the facts and resources available to the petitioner's counsel at the time of trial. *Id.* at 589; *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994). When considering an ineffective assistance of counsel claim, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

When applying *Strickland* and section 2254(d), review is "doubly deferential." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). As stated in *Mitchell v. Epps*, 641 F.3d 134 (5th Cir. 2011),

> For the district court, "[t]he pivotal question [was] whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*[, 131 S. Ct. at 785]. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788. "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786.

*Mitchell*, 641 F.3d at 141(alterations, except citation alteration, in original)(citation omitted). With this high standard of deference in mind, the Court turns to evaluate Morton's claims that his trial counsel was ineffective.

a.   Alibi Defense Instruction

Morton argues that his counsel was ineffective when he failed to request an alibi defense instruction. [8] at 7. Although he does not expand on this argument in his petition, on direct appeal and post-conviction he argued that without an alibi defense instruction, the jury deliberated his fate without any theory of defense instruction, thus his counsel was ineffective. [12-10] at 22; [12-12] at 21, 23-26.

The undersigned finds that the state courts' decisions on this issue were neither contrary to, nor involved an unreasonable application of, clearly established federal law. In his direct appeal, the Mississippi Court of Appeals found that counsel's decision not to pursue an alibi instruction could have been strategic, based on the testimony of other witnesses. *Morton*, 246 So. 3d at 905. The court further stated that "[t]here was nothing that prevented the jury from considering Morton's alibi defense." *Id.* Nevertheless, the Court of Appeals declined to address the claim in order to preserve the issue for Morton's post-conviction motion. *Id.* The Mississippi Supreme Court addressed the issue on post-conviction relief and found that Morton failed to show deficient performance and prejudice. [12-12] at 2.

"Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Galvan v. Cockrell*, 293 F.3d 760 (5th Cir. 2002)(citing *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)(stating that federal habeas courts do not grant relief solely

on the basis that a jury charge was erroneous)).  Errors in jury instructions do not state a claim

for relief unless the error resulted in "prejudice of constitutional magnitude."  *Sullivan v.*

*Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986).  "An omission, or an incomplete instruction, is

less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145,

155 (1977).

Under Mississippi law, an alibi "'[m]eans that at [the] time of commission of [the] crime

charged in [the] indictment defendant was at [a] different place so remote or distant or under

such circumstances that he could not have committed [the] offense'" for which he is being

charged. *Tucker v. State*, 647 So. 2d 699, 705 (Miss. 1994)(quoting *Blacks Law Dictionary*,

Rev. Fourth Ed. (1968)).  Testimony from multiple witnesses placed Morton at the scene of the

crime.  And there were inconsistencies in the testimony of his alibi witness, who situated Morton

only a few minutes by car from the crime scene.  By the *Tucker* standard, Morton was not

entitled to the instruction.  Moreover, given the conflicting testimony of various witnesses, his

counsel may have made a strategic decision not to seek an alibi witness instruction.  *See Wallace

v. Banks*, No. 3:15-cv-669-CWR-RHW, 2018 WL 3852624, *6 (S.D. Miss. July 9, 2018)(finding

that counsel's failure to request an alibi instruction did not constitute ineffective assistance of

counsel)(citing *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)(a "conscious and informed

decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance

of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.").

Even so, Morton's counsel subjected prosecution witnesses to thorough cross-examination, and

he highlighted the alibi defense witness's testimony and theory of defense during closing

argument. *See* [12-8] at 120-127. Accordingly, the Mississippi Supreme Court reasonably applied the *Strickland* standard, and this argument does not provide a basis for habeas relief.

### b.  Failure to Request a *Frank*'s Hearing on Search Warrant

Without elaboration, Morton argues that his counsel was ineffective for failing to request a "*Franks's*" hearing on a search warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978).[3] In his *pro se* supplement brief on direct appeal, Morton argued that there was insufficient probable cause to issue the search warrant for a vehicle he had driven, thus evidence recovered from the search should have been excluded, and, therefore, his trial counsel was ineffective when he failed to challenge the validity of the search warrant. [12-10] at 56-57. The Mississippi Court of Appeals declined to address the claim on direct appeal, but pointed out that Morton "fails to further specify what statements were false or untrustworthy or identify the sources. Thus, his claims are merely conclusory." *Morton*, 246 So. 3d at 908. The Mississippi Supreme Court reviewed this claim on post-conviction relief and found that Morton failed to meet *Strickland*'s standards of deficient performance and prejudice. [12-12] at 2.

Likewise, Morton has failed to show that the Mississippi Supreme Court's decision on this issue was contrary to or an unreasonable application of the *Strickland* standard. In this forum, his claims suffer from the same failures as in state court: he fails to delineate which statements were false or untrustworthy, and he fails to identify sources for his claims. In short, his arguments are conclusory. Although *pro se* habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.

---

[3] "Under *Franks*, a search warrant may be challenged if (a) the defendant makes a substantial preliminary showing that the affiant made a false statement knowingly and intentionally or with reckless disregard for the truth, and (b) the allegedly false statement was necessary to the finding of probable cause." *Morton*, 246 So. 3d at 907 (quoting *Russell v. State*, 73 So. 3d 542, 545 (Miss. Ct. App. 2011))(citations omitted).

*United States v. Woods*, 870 F.3d 285, 288 n.3 (5th Cir. 1989).  Accordingly, this argument fails to form the basis of habeas relief.

        c.  <u>Failure to Request DNA Testing</u>

      Morton argues that his counsel was ineffective when he failed to request DNA testing that would prove the perjury of the State's witness.  [8] at 7.  Morton argued this claim in his motion for post-conviction relief before the Mississippi Supreme Court, asserting that DNA testing would have impeached Kimberly Chapman's testimony, thereby rendering it inadmissible and, thus, the jury would have acquitted him.  [12-12] at 44.  He asserts that the testing would have connected him to a sexual act, not a violent act.  *Id.*

      At trial, DNA testing of a blood-stained jacket recovered from Chapman's car yielded results consistent with the victim's DNA.  [12-5] at 72.  In addition, testing showed DNA on the jacket that was consistent with Morton's, as well as his patrilineal male relatives.  *Id.* at 73-76.  Morton testified that his DNA was present on the jacket because, on the night of May 3, Morton and Chapman had sex in her car while she was wearing the subject jacket.  [12-7] at 139.  Morton's witness, Jones, also testified that he observed the two having sexual relations in her car.  *Id.* at 57-58.  Chapman admitted to wearing the jacket that night, [12-6] at 28, but denied having sexual relations with Morton.  *Id.* at 46-47.  The State's expert who conducted the DNA testing could not identify the source of the DNA material that was linked to Morton.  [12-5] at 77-78.

      The Mississippi Supreme Court's decision on this issue was not an unreasonable application of the *Strickland* standard because Morton failed to demonstrate deficient performance and prejudice on this issue.  Through Morton's and Jones's testimony, his counsel made the jury aware of Morton's explanation for the manner in which his DNA was placed on

the jacket, which Chapman disputed.  Further testing to determine whether the DNA came from

semen, if available, or even if it existed, may have impeached Chapman's testimony, but would

not have rendered it inadmissible, as Morton argues.  Morton's arguments are highly speculative,

and speculative allegations of prejudice do not establish ineffective assistance of counsel.  *See*

*United States v. Gann*, 116 F.3d 476 (5th Cir. 1997) (unpublished)(citing *Lincecum v. Collins*,

958 F.2d 1271, 1279-1280 (5th Cir 1992)).  Accordingly, this argument does not form the basis

for habeas relief.

      3.   <u>Ground Five:  Sufficiency of the Indictment for Attempted Murder</u>

      Morton next argues that the wording of the indictment in Count I's charge of attempted

murder is insufficient because it fails to allege an essential element of the offense. On direct

appeal, Morton's counsel argued that the indictment failed to allege that Morton failed or was

stopped from completing the act as charged, therefore the indictment was defective.  *See* [12-10]

at 15-17.

      Count I of the indictment charging attempted murder states that Morton and Chapman,

"while aiding, abetting and/or acting in concert with each other and/or others[:]"

> did willfully, unlawfully, and feloniously, and with deliberate design to cause
> his/her death, did attempt to kill **Charlie Arnold** a human being, under such
> circumstances that, if accomplished, would constitute an offense of murder under
> Ms. Code Ann. 97-3-19 by repeatedly striking **Charlie Arnold in the head with
> a metal walking stick**, without authority of law, in violation of Miss. Code 1972,
> Ann. Sec. 97-1-7, contrary to the statute in such cases made and provided, and
> against the peace and dignity of the State of Mississippi.

[12-1] at 7 (emphasis in original).

      The Mississippi Court of Appeals found Morton's argument to be without merit.  The

court concluded that the indictment gave him legally sufficient notice of the charge of "attempted

murder" because the indictment used the word "attempt" and pointed out that the indictment

"contained the language that the crime, 'if accomplished, would constitute an offense of murder,'

indicating the incompleteness of the attempted crime." *Morton*, 246 So. 3d at 903.

"The sufficiency of a state indictment is not a matter for federal habeas relief unless it can

be shown that the indictment is so defective that it deprives the state court of jurisdiction."

*McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994).  Where the state courts have held that an

indictment is sufficient under state law, a federal court need not address that issue.  *Millard v.*

*Lynaugh*, 810 F.2d 1403 (5th Cir.), *cert. denied*, 484 U.S. 838 (1987); *Alexander v. McCotter*,

775 F.2d 595 (5th Cir. 1985).  Morton has failed to show that the indictment is defective, and the

Mississippi Court of Appeals found that the indictment was sufficient under state law.

Accordingly, this claim does not form the basis for habeas relief.

> 4.   Grounds Six and Seven:  Sufficiency of the Jury Instructions for Attempted Murder
>       and Armed Robbery

Morton challenges the sufficiency of jury instructions on the charges of attempted murder

and armed robbery.  As a general rule, jury instructions do not form a basis for habeas relief.

*Williams v. Lockhart*, 736 F.2d 1264, 1267 (5th Cir. 1984).  Habeas corpus relief is available

when a petitioner establishes that improper instructions caused a fundamental defect which

inherently results in a complete miscarriage of justice or an omission inconsistent with the

rudimentary demands of fair practice.  *Williams*, 736 F.2d. at 1267. A federal court may grant

habeas relief based on an alleged error in a jury charge only if the "'ailing instruction by itself so

infected the entire trial that the resulting conviction violates due process.'"  *Weeks v. Scott*, 55

F.3d 1059, 1065 (5th Cir. 1995)(quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).  Moreover,

it is "well established" that challenged jury instructions "'may not be judged in artificial

isolation,' but must be considered in the context of the instructions as a whole and the trial

record." *Estelle*, 502 U.S. at 72 (1991)(quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). With these tenets in mind, the Court turns to the instructions at issue.

    a.   <u>Attempted Murder Instruction</u>

Without elaboration, Morton argues that the elements of the jury instructions for attempted murder in Count I omit an essential element and vary in material aspects to the indictment. [8] at 22. Morton's counsel made this argument in his direct appeal. [12-10] at 17-19. In those filings, counsel posited that the elements instruction for attempted murder failed to track the language of the statute or the indictment. *Id.* at 18. His counsel also argued that the instruction differed in such a way that it lessened the State's burden of proof, thereby constructively amending the indictment. *Id.*

As recounted in sub-section 3 *supra*, the indictment charged that Morton and Chapman "did attempt to kill Charlie Arnold . . . under such circumstances that, if accomplished, would constitute an offense of murder . . . ." [12-1] at 7.

The challenged jury instruction No. S-1B stated:

As to Count I of the Indictment

The Court instructs the Jury that if you unanimously find from the evidence in this case, beyond a reasonable doubt, that the defendant, Bryan Morton, on or about May 4, 2014, in Warren County, Mississippi:

1.  did purposefully or knowingly and unlawfully and with deliberate design did attempt to commit the murder of Charlie Arnold, a human being; and

2.  Bryan Morton failed to actually kill Charlie Arnold, and therefore did not meet the elements of murder;

then, and in that event, Bryan Morton is guilty of Attempted Murder and it is your sworn duty to so find.

The Court further instructs the jury that if the State fails to prove any of the above elements, beyond a reasonable doubt, then in that event you must find the defendant, Bryan Morton, not guilty.

[12-1] at 104.

The Mississippi Court of Appeals denied relief. *Morton*, 246 So. 3d at 903. The court concluded that "the jury instructions accurately followed the requisite elements of attempted murder by charging that Morton had to have (1) intended to murder Arnold, (2) attempted to murder Arnold, and (3) failed to actually kill Arnold." *Id.* The court also determined that "the variance between the indictment and the jury instructions did not substantially alter the elements of proof necessary for a conviction" because the jury still "had to find beyond a reasonable doubt that Morton had intended to commit murder, attempted to do so, and failed to do so." *Id.* at 904.

Taken as a whole, the jury instructions adequately instructed the jury as to the proper elements of attempted murder and the appropriate burden of proof. As the Mississippi Court of Appeals found, the disputed attempted murder instruction included the required elements and maintained that the State had the burden to prove the elements beyond a reasonable doubt. The undersigned cannot find that the "'ailing instruction by itself so infected the entire trial that the resulting conviction violated due process.'" *Weeks*, 55 F.3d at 1065 (quoting *Estelle*, 502 U.S. at 72). Finding no basis to disturb the state court's decision, the undersigned concludes that this claim does not provide a basis for habeas relief.

b. Armed Robbery Instruction

Morton argues that the elements of the jury instructions for armed robbery vary materially from the elements and facts alleged in the indictment.[4]  [8] at 23.  In his direct appeal, Morton's counsel argued that the indictment charged that he took certain items from Arnold by violence or fear of immediate injury while using or exhibiting a knife.  [12-10] at 19-20.  However, at trial the instruction only required an "attempt" to take personal property from Arnold, with the intent to permanently deprive her of the property, not an actual taking of the items or the specific items listed in the indictment.  *Id.* at 20.

Count II, the armed robbery charge, alleged that Morton and Chapman, "while aiding, abetting and/or acting in concert with each other and/or others[:]"

> did willfully, unlawfully and feloniously **take U.S. currency, a wedding ring, and a purse***,* the personal property of **Charlie Arnold** from the person of or from the presence of **Charlie Arnold** against his/her will by violence to his/her person by use of **a knife,** a deadly weapon, or by putting him/her in fear of immediate injury by the exhibition of said deadly weapon in violation of Miss. Code 1972, Ann. Sec. 97-3-79, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

[12-1] at 7-8 (emphasis in original).

Jury Instruction No. S-2, as to Count II of the Indictment, stated, as follows:

> The Court instructs the Jury that if you unanimously find from the evidence in this case, beyond a reasonable doubt, that the defendant, Bryan Morton, on or about May 4, 2014, in Warren County, Mississippi:

> 1. did willfully, unlawfully, and feloniously attempt to take from the person of, or from the presence of, Charlie Arnold, certain personal property of Charlie Arnold, and

> 2. such attempted taking, at the time or instance that it was so attempted, was then with the intent to permanently deprive Charlie Arnold of said property, and

---

[4] The Court interprets Morton's reference to "Count III" as a scrivener's error that also appeared in his counsel's brief on direct appeal.  *See* [12-10] at 20.  The armed robbery charge was contained in Count II of the indictment. *See* [12-1] at 7-8.

3.  such taking was against the will of Charlie Arnold, by putting said Charlie Arnold in fear of immediate injury to her person, and

4.  by the exhibition of a deadly weapon, to wit: a knife,

then, and in that event, the defendant, Bryan Morton, is guilty of armed robbery and it is your sworn duty to so find.

The Court further instructs the jury that if the State fails to prove any of the above elements, beyond a reasonable doubt, then in that event you must find the defendant, Bryan Morton, not guilty.

[12-1] at 105.

The Mississippi Court of Appeals determined that the issue was without merit. *Morton*, 246 So. 3d at 904. According to the court, under Mississippi law, "'both an attempt to take and an actual taking of another's personal property against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon constitutes robbery.'" *Id.* (quoting *Houston v. State*, 811 So. 2d 371, 372 (Miss. Ct. App. 2001)). The court concluded that the variance was "immaterial," reasoning that "if the jury found that Morton actually took the property, he was guilty of robbery. If the jury found that Morton only attempted to take the property, he was guilty of robbery." *Id.*

Indeed, Mississippi's armed robbery statute provides that "[e]very person who shall feloniously take or *attempt to take* from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . ." Miss. Code Ann. § 97-3-79 (Rev. 2014)(emphasis added). Thus, the jury charge tracked the language of the statute. Viewing the jury instruction in the context of the other jury instructions and the trial record, the undersigned cannot find that the "'instruction by itself so infected the

22

entire trial that the resulting conviction violated due process.'" *Weeks*, 55 F.3d at 1065 (quoting *Estelle*, 502 U.S. at 72). Accordingly, this ground does not form the basis of habeas relief.

III.    <u>CONCLUSION</u>

For the reasons set forth in this Report and Recommendation, the undersigned recommends that Morton's petition be denied and that this matter be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy[5] shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 31st day of January, 2022.


/s/ F. Keith Ball                                  .
UNITED STATES MAGISTRATE JUDGE

---

[5] Where a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).

23